IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THERMOTEK, INC.,                    §
                                    §
                                    §
                Plaintiff,          §
                                    § Civil Action No. 3:10-CV-2618-D
VS.                                 §
                                    §
WMI ENTERPRISES, LLC, et al.,       §
                                    §
                Defendants.         §

MEMORANDUM OPINION
AND ORDER

        Defendants' motion to dismiss presents the questions whether

the court can exercise *in personam* jurisdiction over the defendants

and whether the plaintiff has stated claims for fraud and tortious

interference on which relief can be granted.  The court must also

decide whether to seal two documents that have been publicly filed

in this case.  For the reasons that follow, the court concludes

that it can exercise *in personam* jurisdiction over one defendant,

that plaintiff has stated a claim for fraud but not for tortious

interference against the remaining defendant, that plaintiff should

be permitted to replead its tortious interference claim, and that

the documents should be sealed.

I

        This is an action by plaintiff ThermoTek, Inc. ("ThermoTek"),

a Texas corporation, against defendants WMI Enterprises, LLC

("WMI"), a limited liability corporation organized under Illinois

law, and Mike Wilford ("Wilford"), an Illinois resident, to recover

on claims for fraud, misappropriation of trade secrets, tortious interference with existing and prospective relationships, and unfair competition.[1] Wilford is the manager of WMI. He has also acted as Chief Operating Officer of at least three other medical sales companies, including Orthoflex, Inc. ("Orthoflex"), Wabash Medical Company, LLC ("Wabash"), and Motion Medical Technologies, LLC ("Motion Medical").

WMI makes and sells therapeutic wraps for use in treating deep-vein thrombosis ("DVT"). ThermoTek designed and produces a thermal compression therapy system called VascuTherm that is used during DVT treatment. The VascuTherm system is used in conjunction with specialized therapy wraps to transfer pressure to and apply heat or cold to limbs and other body parts during DVT treatment. ThermoTek designs, manufactures, and repairs the VascuTherm system at its facility in Flower Mound, Texas. ThermoTek posits that only its own wraps can be used to implement treatment with the

---

[1]The court recounts the facts favorably to ThermoTek as the nonmovant with respect to defendants' motion to dismiss for lack of *in personam* jurisdiction. *See, e.g., Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) ("When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts") (internal quotation marks and citation omitted). In deciding Wilford's Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court construes ThermoTek's claims in the light most favorable to it, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in ThermoTek's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

VascuTherm system.

Wilford began purchasing VascuTherm systems for resale on behalf of Wabash and Motion Medical in March 2008. Wilford traveled to Texas to tour ThermoTek's facility. ThermoTek allowed him to tour the facility and gain a detailed understanding of ThermoTek's business based on his representations that he was interested in distributing the VascuTherm system through Wabash and Motion Medical. Wilford traveled to Texas a second time to negotiate a distributor agreement (the "Distributor Agreement"), which the parties signed in May 2009. Under the terms of the Distributor Agreement, Wilford has agreed not to purchase, sell, or distribute any products that provide thermal or compression therapy in competition with the VascuTherm system. The Distributor Agreement also provides that all proprietary information communicated between the parties will remain the exclusive property of the disclosing party, both during and after the conclusion of the Distributor Agreement.

After the parties entered into the Distributor Agreement, ThermoTek continued to ship VascuTherm systems to Wabash and Motion Medical from its facility in Texas. Wilford contacted ThermoTek employees several times in 2008 and 2009 to inquire about warranty claims and repairs to the VascuTherm systems that his companies sold. Wilford explained in his information requests that he was seeking to understand better the VascuTherm system's functionality

and ThermoTek's efforts to improve its design. For example, in 2008 and in July 2009, Wilford requested detailed designs for therapeutic wraps, including some wraps sold exclusively through another distributor. ThermoTek provided Wilford design information about some of its wraps but did not disclose the design details of wraps sold exclusively through other distributors. When ThermoTek refused to disclose this information, Wilford used confidential design information had already been provided to produce and distribute replica wraps through WMI.

Wilford organized WMI in January 2010. WMI makes and sells thermal and compression therapy treatment systems for use in treating DVT. One of its products is a wrap designed for use in thermal and compression treatment. WMI maintains that the product is appropriate for use with the VascuTherm system. According to ThermoTek, the WMI wrap is in fact a reproduction of the ones sold with the VascuTherm system, and WMI's thermal and compression treatment system is a reproduction of the VascuTherm product. WMI developed its products using confidential information that Wilford obtained from his interactions with ThermoTek on behalf of Wabash and Motion Medical. Wilford purported to contact ThermoTek's employees and visit its facilities to learn more about the VascuTherm product and its improvement as an interested distributor, but he in fact intended to and did use this information to create and market a competing product through a new

company, WMI.

ThermoTek sued Wilford and WMI in Texas state court, and defendants removed the case based on diversity of citizenship. They now move to dismiss this action for lack of personal jurisdiction or, alternatively, to dismiss ThermoTek's claims for fraud and tortious interference under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. ThermoTek opposes the motion and moves in the alternative for leave to replead. ThermoTek separately moves the court to seal certain documents that defendants have publicly filed in support of their motion to dismiss.

II

The court turns initially to defendants' motion to dismiss for lack of *in personam* jurisdiction.

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with

the Due Process Clause of the Fourteenth Amendment. *See id.;*
*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir.
2000).

> The Due Process Clause of the Fourteenth
> Amendment permits the exercise of personal
> jurisdiction over a nonresident defendant when
> (1) that defendant has purposefully availed
> himself of the benefits and protections of the
> forum state by establishing "minimum contacts"
> with the forum state; and (2) the exercise of
> jurisdiction over that defendant does not
> offend "traditional notions of fair play and
> substantial justice." To comport with due
> process, the defendant's conduct in connection
> with the forum state must be such that he
> "should reasonably anticipate being haled into
> court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes
omitted). To determine whether exercising jurisdiction would
satisfy traditional notions of fair play and substantial justice,
the court examines (1) the defendant's burden, (2) the forum
state's interests, (3) the plaintiff's interest in convenient and
effective relief, (4) the judicial system's interest in efficient
resolution of controversies, and (5) the states' shared interest in
furthering fundamental social policies. *Ruston Gas Turbines, Inc.*
*v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either
specific or general jurisdiction over the defendant. *Mink*, 190
F.3d at 336. "Specific jurisdiction exists when the nonresident
defendant's contacts with the forum state arise from, or are
directly related to, the cause of action. General jurisdiction

exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Latshaw*, 167 F.3d at 211 (footnotes omitted).

III

The court considers first whether it can exercise personal jurisdiction over WMI.

ThermoTek maintains that the court can exercise *in personam* jurisdiction over WMI because WMI has used ThermoTek trade secrets that Wilford obtained by misappropriation during his visits to Texas and through his other interactions with ThermoTek and because WMI's use of these trade secrets causes injury to ThermoTek in Texas in the form of lost revenue and profits. ThermoTek maintains that WMI could reasonably anticipate being haled into court in Texas because Wilford visited ThermoTek's Texas offices and obtained confidential information from ThermoTek while acting in his capacity as an officer of Orthoflex, Wabash, or Motion Medical.

The court disagrees.

These allegations are relevant to whether the court can exercise *in personam* jurisdiction over *Wilford*, not over *WMI*. ThermoTek does not allege that *WMI* maintained any contacts with Texas sufficient to support *in personam* jurisdiction. WMI was incorporated in January 2010, after the alleged misappropriation of ThermoTek's trade secrets had already taken place. ThermoTek has not alleged facts that would establish a prima facie showing that WMI has sufficient minimum contacts with Texas.

The only contact that ThermoTek alleges between WMI and Texas is the injury ThermoTek has suffered in Texas. The court recognizes that, under *Calder v. Jones*, 465 U.S. 783 (1984), an individual injured in one state need not go to the state of defendant's conduct to seek redress if the defendant knowingly caused the injury in plaintiff's state. *Id*. at 790. "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Clemens v. McNamee*, 615 F.3d 374, 386 (5th Cir. 2010) (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)). But "the 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum," and "the

plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002); *see also Mullins v. TestAmerica Inc.*, 564 F.3d 386, 402 (5th Cir. 2009) (determining, for the purposes of *Calder*'s effects test, whether "the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured contractual relationship"); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (the "'effects' test 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.'" (citations omitted)). "[T]he effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Allred v. Moore & Peterson*, 117 F.3d 278, 287 (5th Cir. 1997) (internal quotation marks omitted).

ThermoTek has failed in its amended complaint to make a prima facie showing that, after WMI's formation in 2010, it has engaged in out-of-state tortious conduct expressly aimed at Texas. ThermoTek alleges that when Wilford contacted it, requested information about its products, and visited its facility, he did so on behalf of WMI. But it has not explained how Wilford could have taken these actions on behalf of WMI before WMI was formed. ThermoTek has not supplied any facts supporting its allegations

that WMI solicited information potentially entitled to trade secret protection. ThermoTek has not alleged that WMI made any misrepresentations in an attempt to obtain and misappropriate trade secret information. Nor has it asserted that it provided any trade secret information to a representative of WMI after its formation. Indeed, the only contact ThermoTek alleges between WMI and Texas is a negative effect on its sales and customer relationships due to WMI's continued production of its wraps allegedly produced using ThermoTek's trade secret information. This injury, although felt in Texas, is not sufficient of itself to establish minimum contacts between WMI and Texas.

Accordingly, the court dismisses ThermoTek's claims against WMI for lack of *in personam* jurisdiction by Rule 54(b) final judgment filed today.

IV

The court next considers whether it can exercise *in personam* jurisdiction over Wilford. Wilford maintains that the court lacks *in personam* jurisdiction over him for essentially two reasons: first, because his only connections with ThermoTek and Texas arise out of his activities as an officer of other corporations, not WMI; and, second, because the contacts he developed with Texas while acting on behalf of Orthoflex, Wabash, and Motion Medical are insufficient under the fiduciary-shield doctrine.

Wilford argues that the court cannot exercise specific jurisdiction because ThermoTek complains only of his conduct in Texas taken in his capacity as an officer of other corporations that occurred before the formation of WMI. The court disagrees.

ThermoTek alleges that Wilford traveled to its Texas headquarters twice——once to tour its facility and once to negotiate the Distributor Agreement. It avers that Wilford made misrepresentations on these visits, indicating that he was interested in learning more about the VascuTherm system so that he could become a more effective distributor and help remedy design defects in the product, when he actually intended to obtain trade secret information about the wraps to produce his own wraps in competition with ThermoTek. ThermoTek further alleges that it disclosed trade secret information to Wilford based on his representations, and that this information has enabled him to produce and sell competing products through WMI. In addition to Wilford's trips to Texas and the misrepresentations he allegedly made to ThermoTek in the course of his visits, ThermoTek alleges that Wilford made similar misrepresentations to its representatives in numerous other communications with its employees. "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *See, e.g., Middlebrook v. Anderson*, 2005 WL 350578, at *3 (N.D. Tex. Feb. 11,

2005) (Fitzwater, J.) (quoting *Lewis v. Fresne,* 252 F.3d 352, 358-59 (5th Cir. 2001)). And, as here, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir. 1999). ThermoTek's allegations thus establish sufficient minimum contacts for the court to exercise personal jurisdiction over Wilford.

                                   B

Nor is Wilford's fiduciary-shield argument meritorious. The fiduciary-shield doctrine does not apply to a corporate officer who injures a third person by his tortious activity, even if such acts are performed within the scope of his employment. *See Tempur-Pedic Intern., Inc. v. Go Satellite, Inc.,* ___ F.Supp.2d ___, 2010 WL 5101186, at *8 (N.D. Tex. Dec. 8, 2010) (Fitzwater, C.J.) (citing *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985)); *see also Ponder Research Grp., LLP v. Aquatic Navigation, Inc.,* 2009 WL 2868456, at *7 (N.D. Tex. Sept. 4, 2009) (Means, J.) ("The [fiduciary-shield] doctrine does not apply to intentional torts or fraudulent acts committed by a corporate officer"); *Fowler v. Broussard*, 2001 WL 184237, at *5 (N.D. Tex. Jan. 22, 2001)(Fitzwater, J.) (holding that fiduciary shield was inapplicable where defendants allegedly transmitted misrepresentations to Texas via email and telephone and allegedly breached duties of loyalty). ThermoTek has made a prima facie

showing that Wilford committed fraud and misappropriated ThermoTek trade secrets. Specifically, among other communications with its employees, ThermoTek alleges that Wilford contacted its North Central Regional Manager on December 22, 2008 to request detailed design and material specifications for the VascuTherm wraps. It avers that Wilford traveled to its Texas facilities on two occasions and represented that he sought to obtain information about the company and its products to be a more effective distributor and to help remedy design defects. At the time of those trips, however, ThermoTek alleges that Wilford intended to use this information to produce his own wraps in competition with ThermoTek. ThermoTek further maintains that it provided this confidential trade secret information to Wilford in reliance on his representations that he sought to distribute the product as effectively as possible, and that Wilford then used this information to produce wraps that compete with the VascuTherm system and harm ThermoTek's business. These facts are sufficient to establish a prima facie showing that Wilford intentionally committed tortious acts in his capacity as a corporate representative. Therefore, the fiduciary shield doctrine does not preclude the court from exercising *in personam* jurisdiction over him.

Having determined that Wilford has sufficient minimum contacts, the court now addresses whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. As explained above, to determine whether exercising jurisdiction satisfies traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furtherance of fundamental social policies. *Ruston Gas Turbines*, 9 F.3d at 421. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

"Texas has an interest in protecting persons located here from being defrauded and in providing a remedy for torts directed to the state." *Fowler*, 2001 WL 184237, at *5. ThermoTek has an interest in obtaining convenient and effective relief in the state where it allegedly suffered the tort damages. The judicial system's interest in efficient resolution of controversies, and the states' shared interest in fundamental social policies, neither support nor

undercut the exercise of jurisdiction here.  And Wilford has not made a compelling case against exercising personal jurisdiction over him.  The court therefore denies Wilford's motion to dismiss for lack of *in personam* jurisdiction.

V

Having determined that it can exercise *in personam* jurisdiction over Wilford, the court now considers whether ThermoTek has pleaded a fraud claim against Wilford on which relief can be granted.[2]

A

In deciding a motion to dismiss filed under Rule 12(b)(6), "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

---

[2]The court's conclusion above that ThermoTek has established *in personam* jurisdiction based in part on making a prima facie showing of fraud was reached under the prima facie standard that applies in a no-hearing situation. *See Latshaw*, 167 F.3d at 211.

*Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2))(alteration omitted).

Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). "'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992)). In other words, the claimant must plead the "who, what, when, where, and how" of the fraud. *Id.* (internal quotation marks and citation omitted). Rule 9(b) is not intended, however, "to procure punctilious pleading detail." *Steiner v. Southmark Corp.,* 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.). Rule 9(b) must be "'read in

conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990) (internal quotation marks omitted)).  Thus it must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings.  *Singh v. Bajwa*, 2008 WL 3850545, at *5 (N.D. Tex. Aug. 19, 2008) (Fitzwater, C.J.) (internal quotation marks and citations omitted).  "The court's key concern in assessing a complaint under Rule 9(b) is whether the plaintiff seeks redress of specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller*, *P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (internal quotation marks omitted).  "The complaint must be sufficiently particular to show that the plaintiff is not seeking a license to go fishing for indicia of fraud."  *Id.* (internal quotation marks omitted).

B

ThermoTek has adequately pleaded a claim for fraud against Wilford.  The elements of common law fraud in Texas are

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th

Cir. 2004) (Texas law) (internal citations omitted).

ThermoTek alleges that Wilford contacted its North Central Regional Manager on December 22, 2008 to request detailed design and material specifications for the VascuTherm wraps, and that he requested and received similar information on other occasions. ThermoTek avers that Wilford traveled to its Texas facility in mid-2008 and in May 2009, and that he misrepresented during his visits that, as a distributor of ThermoTek products, he was seeking to gain a greater understanding of ThermoTek's business by learning about its designs and production methods. ThermoTek avers that Wilford also misrepresented that he sought to understand and help minimize the effects of design defects in the VascuTherm system since, as a distributor, he was interested in its success.

ThermoTek alleges that Wilford made these misrepresentations with the intent that ThermoTek would disclose information to him as a distributor about the VascuTherm system, but that he in fact intended to use the information to gain an unfair advantage by producing the wraps through his new company, WMI, in direct competition with ThermoTek.

ThermoTek also avers that it relied on these misrepresentations to its detriment when it disclosed design and material specifications for the VascuTherm system, including some allegedly confidential or proprietary information.

ThermoTek's first amended complaint adequately pleads that

material representations were made; that they were false when made; that Wilford knew they were false; that he made the misrepresentations with the intent that ThermoTek should act upon them; that ThermoTek did act in reliance on them; and that ThermoTek was injured as a result. The court therefore denies Wilford's motion to dismiss ThermoTek's fraud claim.[3]

## VI

The court now considers whether ThermoTek has adequately pleaded a claim for tortious interference with existing and prospective relationships.

### A

ThermoTek alleges that Wilford's production and distribution of thermal compression wraps through WMI constitutes deliberate interference with its existing and prospective customer relationships, and that WMI's sale of allegedly replicated products interferes with ThermoTek's present and prospective business relationships by decreasing the volume of its customers' orders and reducing its profits. Wilford moves to dismiss this claim on the grounds that ThermoTek has not identified contracts or customer relationships that have been affected and has not adequately pleaded proximate causation because it has not alleged that Wilford

_____

[3]In defendants' reply brief, they argue that ThermoTek's misappropriation and unfair competition claims should also be dismissed because they are predicated on its fraud claim. At least because the court is denying the motion to dismiss ThermoTek's fraud claim, the court denies this request as well.

took an active part in persuading a party or prospective party to a contract to breach or decline to ratify an agreement.

"The theory of tortious interference with business relations by a third person includes two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference with prospective contractual relations." *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2009 WL 4016117, at *2 (N.D. Tex. Nov. 20, 2009) (Fitzwater, C.J.) (internal quotation marks and citations omitted). ThermoTek alleges tortious interference under both. The elements of tortious interference with existing contracts are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that such interference proximately caused injury; and (4) that actual damage or loss occurred. *E.g. Amigo Broad., LP v. Spanish Broad. Sys., Inc.,* 521 F.3d 472, 489 (5th Cir. 2008); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). The elements of tortious interference with prospective business relations are: (1) there was a reasonable probability that it would have entered a contractual relationship with a third party; (2) the defendants committed an independently tortious or unlawful act that prevented the contract from being formed; (3) the defendants' tort was committed with a conscious desire to prevent formation of the contract; and (4) that the plaintiff suffered actual harm as a result. *Staton Holdings*, 2009 WL 4016117, at *2 (citing *Johnson v.*

*Baylor Univ.,* 188 S.W.3d 296, 304 (Tex. App. 2006, pet. denied)). "Independently tortious" conduct is behavior "already recognized to be wrongful under the common law or by statute." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

B

ThermoTek has not pleaded a plausible claim of tortious interference with existing contracts. It has not adequately pleaded the existence of customers or contracts affected by Wilford's behavior and has not identified any existing contract or customer who has breached its contract with ThermoTek or turned to another supplier as a result of Wilford's alleged interference with the relationships between ThermoTek and its customers. Instead, ThermoTek alleges only generally that Wilford has interfered with "existing and prospective relationships of [its] customers and other business relationships." Am. Compl. ¶ 31. This general allegation does not allow the court to infer that Wilford willfully and intentionally interfered with specific existing agreements between ThermoTek and its customers and cannot support a plausible claim for tortious interference with existing contracts. *See Staton Holdings,* 2009 WL 4016117, at *5 (holding that allegations that defendant interfered with "contracts with these customers when they do business with [it] and both parties have obligations" insufficient to state a claim for tortious interference with existing contracts).

Nor has ThermoTek pleaded a plausible claim that Wilford interfered with ThermoTek's prospective customer contracts. ThermoTek's general allegation that Wilford has interfered with the "prospective relationships of [its] customers and other business relationships" does not allow the court to infer that Wilford has interfered with any specific prospective contract or client relationship, but merely recites an element of ThermoTek's claim. *See, e.g., Ceramic Performance Worldwide, LLC v. Motor Works, LLC,* 2010 WL 234804, at *3 (N.D. Tex. Jan. 21, 2010) (Kaplan, J.) (dismissing prospective interference claim where "plaintiff [did] not identify any prospective contracts or business relationships with third-parties that [had] been jeopardized"). Because ThermoTek has not adequately alleged any probable existing or prospective contracts jeopardized by Wilford's conduct, the court dismisses its claims for interference with existing and prospective contracts.

VII

ThermoTek requests that, if the court grants defendants' motion, it be permitted to replead. Courts often grant plaintiffs one opportunity to replead, unless it appears that the plaintiff cannot cure the initial deficiencies in the pleading. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies

before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (internal quotation marks and citation omitted)). Because there is no indication that ThermoTek cannot, or is unwilling to, cure the defects in its tortious interference claim, the court grants ThermoTek 30 days from the date this memorandum opinion and order is filed to file a second amended complaint.

VIII

A

ThermoTek moves to seal certain documents contained in defendants' public filings in this case. ThermoTek alleges that Exhibit 7 of the appendix to defendants' January 26, 2011 motion to dismiss and Exhibit E of the appendix to defendants' opposition to its February 28, 2011 motion to seal contain confidential trade secret information about the design and material specifications of the wraps it produces for use with the VascuTherm system. ThermoTek further argues that the information in Exhibit E is protected under the parties' proposed agreed protective order.

Wilford and WMI respond that ThermoTek's interest in the allegedly confidential information does not outweigh the public's right of access to judicial records. According to the defendants, ThermoTek has not offered sufficient evidence to establish that it has a trade secret interest in the secrecy of the documents it now

moves the court to seal.  They further contend that ThermoTek's nearly two-month delay in moving to seal the contested documents indicates that the documents cannot contain information so important as ThermoTek alleges.  Moreover, according to the defendants, the court should not seal judicial records to which the public has already had access.

                                    B

    Under Rule 26(c)(1)(G), the court may, for good cause, issue an order to protect a party with respect to disclosure of its trade secrets.  Without suggesting a final conclusion on whether the documents in question are protected trade secrets, the court concludes that ThermoTek has made a sufficient showing to warrant placing these documents under seal until this issue is resolved.  Accordingly, ThermoTek's motions to seal Exhibits 7 and E are granted.[4]

                          *       *       *

    For the reasons explained, defendants' January 26, 2011 motion to dismiss is granted in part and denied in part.  The court dismisses without prejudice ThermoTek's action against WMI for lack of *in personam* jurisdiction, and it dismisses ThermoTek's claim

_____

    [4]Because the clerk of court may need to make technical choices to implement this decision, the court directs ThermoTek's counsel or someone acting on counsel's behalf to contact Jason McDonald, Dallas Division Manager, regarding the preferred procedure.  He is aware of the court's decision and is available to confer with counsel for both sides or persons acting on their behalf.

against Wilford for tortious interference. The court grants ThermoTek 30 days from the date this memorandum opinion and order is filed to file a second amended complaint that states a tortious interference claim against Wilford. ThermoTek's February 28, 2011 and April 7, 2011 motions to seal certain documents appended to defendants' motions are granted. By Rule 54(b) final judgment filed today, ThermoTek's action against WMI is dismissed without prejudice for lack of personal jurisdiction.

**SO ORDERED.**

April 19, 2011.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE